# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
#### 5:03CV26-2-V
#### (5:00CR15-01-V)

JOSHUA SHANE DANNER,         )
    Petitioner,          )
                         )
    v.                   )         O R D E R
                         )
UNITED STATES OF AMERICA,    )
    Respondent.          )
_____)

**THIS MATTER** is before this Court upon petitioner's "Motion to Vacate, Set Aside, or Correct" under 28 U.S.C. §2255," filed March 3, 2003; and on the "United States' Response To Petition And Motion For Summary Judgment," filed June 9, 2003. For the reasons stated herein, the government's Motion for Summary Judgment will be granted; and the petitioner's Motion to Vacate will be denied and dismissed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on May 2, 2000, a seven-Count Bill of Indictment was filed, charging the petitioner and others with several offenses, including conspiracy to possess with intent to distribute of cocaine, cocaine base and heroin, all in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One); and with possession with intent to distribute quantities of cocaine and cocaine base, in violation of 21 U.S.C. §841(a)(1)

(Count Four).  Neither charge set out specific drug quantities.

Thereafter, however, on November 6, 2000, a Superceding Bill of Indictment was filed.  Although such Superceding Indictment was similar to the first, the second Indictment set forth threshhold drug amounts for each of the allegations.  Such Superceding Indictment also deleted one charge, and charged the petitioner with an additional act of possession with intent to distribute cocaine base (Count Six).  Thus, under the Superceding Indictment, Count One alleged that the conspiracy involved in excess of 1.5 kilograms of cocaine base; less than 50 grams of cocaine powder; and less than 100 grams of heroin; Count Four alleged the petitioner's possession of at least 50 grams of cocaine base and less than 25 grams of cocaine powder; and Count Six alleged his possession of less than 50 grams of cocaine base.

Next, on November 30, 2000, the petitioner entered into a written Plea Agreement with the government.  By the terms of that document, the petitioner agreed to voluntarily plead guilty to the conspiracy charge set forth in Count One of the Superceding Indictment in exchange for the government's promise to dismiss the remaining charges which he was facing.  Further, the Plea Agreement contained a stipulation that the quantity of cocaine base which could be attributed to the petitioner for sentencing purposes was in excess of 1.5 kilograms of cocaine base.  The petitioner also stipulated to the existence of a sufficient

factual basis to support his guilty plea.

In addition, by the terms of the Plea Agreement, the petitioner expressly waived his right to directly appeal his conviction and/or sentence on any ground; and he waived his right to collaterally challenge his case, in an action like the instant one, on any grounds except ineffective assistance of counsel and/or prosecutorial misconduct. The petitioner also waived his right to challenge his Indictment under Apprendi v. New Jersey 530 U.S. 466 (2000).

On January 8, 2001, this Court conducted a Plea & Rule 11 Hearing in this matter. On that occasion, the Court engaged the petitioner in a lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered. In response to the Court's numerous questions, the petitioner swore that he had reviewed a copy of the Superceding Indictment; that he had taken enough time to discuss his case and possible defenses with his attorney; that he understood the charge and penalties which he was facing, particularly as they were explained by both the Court and his counsel; and that he understood that he could plead "not guilty" and proceed to trial.

Equally critical, the petitioner swore that no one had threatened or coerced him, or otherwise promised him anything in order to induce his guilty plea; that he was tendering his plea because he, in fact, was guilty of the subject offense; that he

3

had no hesitation about going forward with his guilty plea; that he had no "lingering questions or statements or comments to make at that time about anything involving [his] case"; and that he was "fully satisfied" with his attorney's services. Thus, after hearing the petitioner's answers to each of its questions, the Court accepted the petitioner's guilty plea.

Next, in March 2001, the Court received a letter from the petitioner, asking to have his court-appointed attorney replaced with new counsel. Such request was premised upon the petitioner's assertion that his attorney was "not doing his best to help [petitioner] out." Among other matters, the petitioner complained that counsel had not tried to get a bond hearing for him, and counsel had failed to help him schedule a meeting with the investigating authorities, presumably so that he could begin his cooperation as contemplated by the Plea Agreement.

Thus, on March 14, 2001, the Court conducted a proceeding to inquire into the status of counsel. After hearing from both the petitioner and his attorney, the Court granted the petitioner's request to have replacement counsel appointed to his case. Accordingly, on April 9, 2001, replacement counsel was formally appointed to represent the petitioner.

At the time that replacement counsel entered the case, the matter was ripe for sentencing. However, defense counsel sought and obtained more than five continuances in order to allow the

petitioner to fully cooperate with the authorities so that he could persuade the government to move for a reduced sentence.

Thus, after his cooperation was complete, on March 4, 2002, the Court held a Factual Basis & Sentencing Hearing in this matter. At that time, the Court determined that the petitioner's Total Offense Level was 35, his Criminal History Category was IV, and his range of exposure was 235 to 293 months imprisonment.

However, the government made a Motion for a downward departure under U.S. Sentencing Guidelines §5K1.1 based upon the petitioner's substantial assistance. Specifically, by its Motion, the government asked the Court to reduce the petitioner's sentencing exposure down to a range of 168 to 210 months imprisonment, and to impose a 175-month sentence.

Thereafter, defense counsel gave a relatively full history of the petitioner's case, explaining that early in his case, the petitioner had desired to cooperate but his first attorney had not yet managed to accommodate that desire; that after this new attorney was appointed to the case, the petitioner's cooperation quickly got underway; and that such cooperation actually had led to the capture of the petitioner's fugitive brother/co-defendant. Thus, defense counsel asked for a 120-month sentence for her client.

Next, the petitioner spoke in his own behalf, apologizing to the Court for his behavior, and noting that he had reflected on

5

his conduct and would continue to ponder it during his period of incarceration.  The petitioner also told the Court that he would not require a 20 to 30-year sentence in order to "learn [his] lesson" in this case.  Consequently, upon its consideration of the foregoing matters, the Court granted the government's Motion for a Downward Departure, and then departed to offense level 31.  Ultimately, the Court sentenced the petitioner to 151 months imprisonment.

At the conclusion of the petitioner's Hearing, the Court advised the petitioner that he was entitled to appeal the Court's Judgment, and told him how to effectuate such appeal.  The Court also recommended that if the petitioner desired an appeal, he should speak with his attorney.  The Court also explained that the petitioner could discuss with his attorney the impact of his appellate waivers on the likelihood of success on appeal.  In response, the petitioner advised the Court that he understood his appellate rights.

Thereafter, the petitioner did <u>not</u> file an appeal. Rather, on March 3, 2003, the petitioner filed the instant Motion to Vacate, raising several challenges, including that his guilty plea was involuntarily and unintelligently tendered; that he is actually innocent of the offense for which he has been convicted; that he was sentenced in violation of <u>Apprendi</u> and its progeny; and that he was subjected to numerous instances of ineffective

6

assistance by his first attorney.

After conducting an initial review of the petitioner's Motion to Vacate, the Court formed the impression that all but the petitioner's claims against counsel likely were subject to summary dismissal. Nevertheless, the Court directed the government to respond to all of the petitioner's claims.

To that end, on June 9, 2003, the "United States' Response To Petition And Motion For Summary Judgment" was filed. Not surprisingly, by that document, the government argues that the petitioner's non-counsel related claims are subject to summary dismissal under the waiver provision of his Plea Agreement and by virtue of the petitioner's guilty plea itself. As for his claims against counsel, the government further argues that even those matters are subject to dismissal because they either are based upon factually erroneous contentions, they are contradicted by his sworn assertions, and/or the petitioner cannot demonstrate any prejudice as a result of counsel's conduct.

On July 2, 2003, the petitioner's "Response In Opposition To Government's Motion For Summary Judgment" was filed. Such document essentially reiterates the claims which were made in the petitioner's Motion to Vacate.

Now, the Court has carefully reviewed these matters and determined, for the reasons set forth in the government's Response, and for the further reasons stated herein, that the

petitioner's Motion to Vacate must be <u>denied</u> and <u>dismissed</u>.

## II. ANALYSIS

### 1. The record conclusively establishes that the provisions of the petitioner's Plea Agreement and its terms are valid and fully enforceable.

At the outset of its analysis, the Court will first put to rest the petitioner's claim that his Plea Agreement and the waiver provisions set forth therein are unenforceable because they were involuntarily and unknowingly tendered. In support of this contention, the petitioner claims that his first attorney failed to adequately explain certain matters to him, and that he did not want to plead guilty in this case due to his supposed "actual innocence." However, contrary to these allegations, the record in this case is replete with evidence of an intelligent and voluntary guilty plea, a valid and fully enforceable Plea Agreement, and the petitioner's guilt.

Indeed, turning first to the Plea Agreement, as has been noted, that document sets forth the petitioner's promise to plead guilty to the conspiracy charge. Such document also contains the petitioner's stipulation that he could be sentenced on the basis of in excess of 1.5 kilograms of crack, along with his waiver of his right to collaterally challenge any matters except counsel's effectiveness and the government's conduct. Notwithstanding the petitioner's alleged problems with his first attorney, the petitioner signed the Agreement and, even after replacement counsel was appointed, he never sought to attack that Plea

Agreement in Court--at least not until now.

Furthermore, during the petitioner's Plea & Rule 11 proceeding, he was fully advised of all of the relevant circumstances, including the elements which the government would have had to prove in order to obtain a conviction at trial. Without hesitation, the petitioner swore to the Court that he and counsel had fully discussed his case and possible defenses; that he understood the circumstances he was facing; that he had not been forced or otherwise inappropriately induced to plead guilty; that he was, in fact, guilty of the subject charge; and that he understood and agreed with the terms of his Plea Agreement. Notwithstanding those facts, the petitioner has come forward with these conclusory allegations in an attempt to circumvent the effects of his Plea Agreement and guilty plea.

However, in cases such as this, the law is well settled that once the trial court conducts a Rule 11 colloquy, such as the one outlined above, and finds the plea to have been knowingly and voluntarily entered and the terms to have been understood and accepted by the parties, absent compelling reasons to the contrary, the validity of the plea, its terms and the defendant's corresponding guilt are deemed to be conclusively established. <u>Via v. Superintendent, Powhatan Correctional Center</u>, 643 F.2d 167 (4th Cir. 1981). <u>Accord</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977) (defendant's plea and statements at Rule 11 proceedings

"constitute a formidable barrier" to their subsequent attack). Statements made during Rule 11 proceedings constitute strong evidence of the voluntariness of a defendant's plea. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).

Moreover, the Fourth Circuit has indicated that where, such as here, the plea bargain was "favorable" to a defendant and that accepting it was "a reasonable and prudent decision," such factors are themselves evidence of "[t]he voluntary and intelligent" nature of the plea. Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1299 (4th Cir 1992).

Based upon the foregoing information--and despite the fact that the petitioner has defaulted this claim by his failure to raise it on direct appeal--the Court finds that the petitioner has failed to set forth a basis upon which the Court can invalidate his guilty plea, his Agreement or any provision therein. Therefore, the petitioner's waiver provisions are valid and fully enforceable against all of the instant allegations, except the ones claiming ineffective assistance of counsel.

### 2. **Moreover the petitioner's non-counsel related claims would be subject to dismissal as procedurally defaulted in any event**.

In addition, the Court finds that the subject claims have been defaulted; therefore, the same are subject to summary dismissal on that basis. That is, as has been noted, the petitioner did not appeal either his conviction or sentence.

Therefore, all of his allegations, save his claim against counsel, are not cognizable by this Court.

To be sure, in United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 120 S.Ct. 1283 (2000), the Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

In this case, the record reflects that the petitioner failed to appeal the matters he now seeks to raise and, with the exception of his belated and sharply contradicted claim of actual innocence, he has even failed to offer a basis for excusing this default. Therefore, even in the absence of his waiver of those matters, the Court also lacks the authority to review the petitioner's non-counsel related claims due to his default of them.

### 3. **Notwithstanding both of the foregoing barriers, the petitioner's non-counsel related claims are meritless**.

In his Motion to Vacate, the petitioner is complaining about a number of matters. However, as the government has correctly pointed out, such claims all are either factually baseless, legally baseless or both.

Indeed, contrary to his numerous assertions, the petitioner's total, unadjusted sentencing range properly was calculated on the basis of his admitted involvement with in excess of 1.5 kilograms of crack cocaine, not heroin or powder cocaine. Therefore, since the conduct of the petitioner and his co-defendants as described in the "Offense Conduct" portion of his Pre-Sentence Investigation Report support both his stipulation and the Court's finding, this claim is without merit.

Similarly, the record reflects that the petitioner pled guilty to a charge which specified drug amounts. The record also shows that the petitioner stipulated to involvement with a particular amount and type of drug; and that there was neither a jury trial or verdict in this case. Accordingly, the petitioner's arguments under Apprendi v. New Jersey, 466 U.S. 530 (2000) and United States v. Rhynes, 196 F.3d 207, 237 (4th Cir. 1999), vacated in part on rehearing en banc, 218 F.3d 310 (4th Cir. 2000), are feckless.

The petitioner's argument that this Court somehow misled him

13

into believing that he faced a life sentence is equally baseless in that the petitioner actually was facing a statutory maximum term of life imprisonment in the absence of any favorable reductions. Thus, the penalty information which the Court gave the petitioner during his Plea Hearing was correct.

Moreover, regarding his claim about not being given the "opportunity to withdraw" his guilty plea, the record shows that petitioner appeared before the Court at least three times after he had entered his plea, yet he never sought to withdraw that plea for any reason. Indeed, even now the petitioner does not claim that he would have withdrawn his guilty plea had he been given the opportunity to do so. Thus, the petitioner's allegation that the Court failed to afford him this opportunity is baseless.

Last, the petitioner's claim of actual innocence--which he bases on his assertion that there simply was no conspiracy--is unquestionably meritless and entirely contradicted by this record which includes his sworn admission to the contrary. Therefore, even if the petitioner's non-counsel related claims were not subject to summary dismissal, he still could not have obtained any relief on them because they each lack merit.

### 4. **The petitioner has failed to state a claim for relief against counsel**.

Turning to the petitioner's claims against counsel, the

Court's review has revealed that these allegations are specious; therefore, they also will be dismissed.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the

outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

More critically, a petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath affirming satisfaction with counsel are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956

16

F.2d at 1299, citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74-75 (1977).

Here, the petitioner has set forth a number of allegations against his first attorney, but has not complained about the performance of his second one. Nevertheless, to the extent that the petitioner's claims against that first attorney are based upon some of the allegations which the Court previously has addressed--such as, counsel's supposed ineffectiveness for allowing him to be sentenced for involvement with heroin, for failing to ensure that the correct drug quantity was used in the Court's calculations, for failing to attack the "defective Indictment and Plea Agreement," and for coercing the petitioner into tendering an unintelligent, involuntary guilty plea--the Court already has put those matters to rest. Suffice it to say, therefore, those claims cannot possibly provide a basis for relief on this Motion.

Alternatively, to the extent that the petitioner's claims against his former attorney are based upon allegations that counsel visited him "infrequently," he did not adequately investigate this case, and he did not request a bond hearing for the petitioner, such claims also must fail. To put it simply, in light of the fact that all of these alleged "failures" preceded the petitioner's entry of his guilty plea and his making of sworn declarations that counsel had been adequate and he was satisfied

17

with counsel's services, the petitioner cannot now be heard to complain about those matters.

Rather, it is well settled that "a guilty plea constitutes a waiver of all non-jurisdictional defects, including the right to contest the factual merits of the charges. United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993)(internal quotations and citations omitted); accord Tollett v. Henderson, 411 U.S. 258 (1973) (defendant who pleads guilty may not challenge non-jurisdictional errors, including deprivations of constitutional rights that occurred prior to plea). Thus, these claims must be flatly rejected.

More significantly, it has not escaped the Court's attention that the petitioner has wholly failed to demonstrate any prejudice as a result of his former attorney's alleged ineffectiveness. On the contrary, the record conclusively shows that although the petitioner was facing a statutory maximum of life imprisonment and a Sentencing Guidelines range of 235 to 293 months imprisonment, due to the assistance provided by both of his attorneys, the petitioner ultimately received a reduced sentence of 151 months. Thus, on this record, the petitioner simply cannot demonstrate that the results of his proceedings were fundamentally unfair or unreliable. Therefore, all of the petitioner's claims against counsel have failed.

### III. **CONCLUSION**

The record of this matter reflects that the petitioner has waived and procedurally defaulted all of his claims, except the ones against his first attorney. As to the latter, the petitioner also has failed to demonstrate an entitlement to relief. Therefore, the government's Motion for Summary Judgment will be <u>granted</u>; and the petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's Motion for Summary Judgment is **GRANTED;** and

2. That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

**Signed: June 2, 2005**

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge